# EXHIBIT  1

▲                   **This page is part of your document - DO NOT DISCARD**                   ▲

# 06 2387430

```
RECORDED/FILED IN OFFICIAL RECORDS
         RECORDER'S OFFICE
       LOS ANGELES COUNTY
           CALIFORNIA
```

## 10/27/06 AT 08:00AM

**TITLE(S) :** _____

▲



REDACTED
L E A D   S H E E T

**FEE**                                                                      D.T.T.

```
Code 01 - 61.00        Code T008 - 001
Code 18 - 04.00
Code 20 - 02.00
```

**CODE
20**

**CODE
19**

**CODE
9**_____    *Grand Total = $67.00*              *Page Count = 19*

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**     **Number of AIN's Shown**




**THIS FORM IS NOT TO BE DUPLICATED**

$G\mathcal{TC}$

$\mathcal{2}$

**PLEASE COMPLETE THIS INFORMATION**

**RECORDING REQUESTED BY:**

FINAL LOAN DOCS

**06 2387430**

**WHEN RECORDED MAIL TO:**

FIRST FRANKLIN
c/o SECURITY CONNECTIONS
1935 INTERNATIONAL WAY
IDAHO FALLS, ID  83402

REDACTED

**THIS SPACE FOR RECORDER'S USE  ONLY**

# DEED OF TRUST

## TITLE OF DOCUMENT

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Govt. Code 27361.6)
(Additional recording fee applies)

275-214
[ Rev. 1/05]

FF0214    REDACTED

**RECORDING REQUESTED BY**

FINAL LOAN DOCS

3

AND WHEN RECORDED MAIL TO

FIRST FRANKLIN
c/o SECURITY CONNECTIONS
1935 INTERNATIONAL WAY
IDAHO FALLS, ID  83402

[Space Above This Line For Recording Data]

# DEED OF TRUST

**MIN:** REDACTED

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated          . October 12, 2006          , together with all Riders to this document.

**(B)  "Borrower"** is OKECHUKWU OBIOMA UKAEGBE, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.

**(C)  "Lender"** is FIRST FRANKLIN  A DIVISION OF NATIONAL CITY BANK
Lender is a National Association                                                                                    organized and existing under
the laws of  United States of America                                                                   . Lender's address is
2150 NORTH FIRST STREET, SAN JOSE, California  95131

**(D)  "Trustee"** is LANDAMERICA GATEWAY

**(E)  "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)  "Note"** means the promissory note signed by Borrower and dated          October 12, 2006          . The Note states that Borrower owes Lender Four Hundred Seventy Two Thousand and no/100
Dollars (U.S. $472,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than          November 01, 2036          .

**(G)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          REDACTED          )5 1/01
.Docs™
ITEM 9926L1 (0011)–REDACTED          *(Page 1 of 12 pages)*          58-5775

06  2387430

4

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider     [ ] Condominium Rider     [ ] Second Home Rider

[ ] Balloon Rider     [ ] Planned Unit Development Rider     [X] Other(s) [specify] Prepay Rider

[ ] 1-4 Family Rider     [ ] Biweekly Payment Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

*5*

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**
[Type of Recording Jurisdiction]

of                    **LOS ANGELES**                    :
[Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

SEE ATTACHED EXHIBIT A

which currently has the address of                    **1467 E ABBOTTSON ST**
[Street]

**Carson**                    , California                    **90746**                    ("Property Address"):
[City]                                                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

**06  2387430**

**06  2387430**

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in

7

writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

**CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **06  238743**    **Form 3005 1/01**

ITEM 9926L5 (0011)—M    *(Page 5 of 12 pages)*    REDACTED    GreatDocs™
rder Call: 1-800-968-5775

REDACTED

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this

*9*

Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)   Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)   Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.   Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period,

*10*

Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this

Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    REDACTED    **Form 3005 1/01**
GreatDocs™
ITEM 9926L9 (0011)—MEI    REDACTED    *(Page 9 of 12 pages)*    Call: 1-800-968-5775

06 2387430

*12*

of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.  Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance

*13*

affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22.   Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23.   Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24.   Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25.   Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

14

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
OKECHUKWU OBIOMA UKAEGBE     -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                     -Borrower


Witness:                                   Witness:

_____                  _____


State of California                    )
County of      Los Angeles             )

On   17ᵗʰ October, 2006        before me,  Jose O. Hospidales, Notary Public,
personally appeared OKECHUKWU OBIOMA UKAEGBE

personally ~~known~~ to me (~~or~~ proved to me on the basis of satisfactory evidence) to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____




**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    REDACTED    Form 3005 1/01
GreatDocs™
ITEM 9926L12 (0011)—MER:                    *(Page 12 of 12 pages)*    **06  2387430**    Call: 1-800-968-5775

15

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _*los Angeles*_ } ss.

On _*17ʰ October 2006*_ before me, _*JOSE O. HOSPIDALES, Notary Public*_
Date _____ Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _*OKECHUKWU OBIGNA UKAEGBE*_,
Name(s) of Signer(s)

☐ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) (is)/are subscribed to the within instrument and acknowledged to me that (he)/she/they executed the same in (his)/her/their authorized capacity(ies), and that by (his)/her/their signature(s) on the instrument the (person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

JOSE O. HOSPIDALES
Commission # 1532531
Notary Public - California
Los Angeles County
My Comm. Expires Dec 6, 2008

---------------------------- **OPTIONAL** ----------------------------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _____ **DEED OF TRUST** _____

Document Date: _____ OCTOBER 12, 2006 _____ Number of Pages: __ 12 __

Signer(s) Other Than Named Above: _____ N/A _____

### Capacity(ies) Claimed by Signer

Signer's Name: _____

XX Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
| Top of thumb here |

© 1999 National Notary Association · 9350 De Soto Ave., P.O. Box 2402 · Chatsworth, CA 91313-2402 · www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

**06  2387430**

REDACTED

File No

*10*

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

LOT 39 OF TRACT NO. 29368, IN THE CITY OF CARSON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 794 PAGES 98 TO 100 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL 100 PERCENT OF THE OIL, GAS, PETROLEUM, AND OTHER HYDROCARBON SUBSTANCES WHICH LIE BELOW A PLANE PARALLEL TO AND 500 FEET BELOW THE NATURAL SURFACE OF SAID LAND WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND TO EXPLORE FOR, DEVELOP, OR REMOVE SAID SUBSTANCES, BUT WITH FULL RIGHT TO EXPLORE FOR, DEVELOP AND REMOVE THE SAME BY MEANS OF WELLS OR EQUIPMENT, HAVING SURFACE LOCATIONS OUTSIDE THE OUTER BOUNDARIES OF SAID REAL PROPERTY, IN AND UNDER OR RECOVERABLE FROM SAID REAL PROPERTY, AS EXCEPTED IN THE DEED FROM DEL AMO AND ESTATE COMPANY, A CORPORATION, RECORDED NOVEMBER 8, 1963 IN BOOK D 2250 PAGE 752, OFFICIAL RECORDS.

Assessor's Parcel Number:      REDACTED

06 2387430

*17*

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this        12th        day of        October 2006
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FIRST FRANKLIN  A DIVISION OF NATIONAL CITY BANK
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1467 E ABBOTTSON ST
Carson, CA  90746
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of        6.9000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A)   Change Dates**
   The interest rate I will pay may change on the first day of        November 2008        ,
and on that day every        6th        month thereafter. Each date on which my interest rate could change is called a "Change Date."
   **(B)   The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   **(C)   Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding   Five and Four Tenths
percentage points (        5.4000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX**
**(AS PUBLISHED IN THE WALL STREET JOURNAL) -- Single Family**

REDACTED

GREATLAND ■
ITEM 54074L1 (C5751L) (9910)   REDACTED        *(Page 1 of 3 pages)*        9393 □Fax 616-791-1131

**06  2387430**

*18*

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          9.9000 % or less than          6.9000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One
percentage point(s) (          1.0000 %) from the rate of interest I have been paying for the preceding          6      months; subject to the following limits: My interest rate will never be greater than          12.9000 %, nor less than          6.9000 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*19*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.


_____ (Seal)        _____ (Seal)
OKECHUKWU OBIOMA UKAEGBE            -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                   -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                   -Borrower                                      -Borrower


*[Sign Original Only]*

REDACTED                                              REDACTED

*(Page 3 of 3 pages)*

06 2387430

*20*

# PREPAYMENT RIDER

This Prepayment Rider is made this        12th        day of        October 2006        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note (the "Note") to
**FIRST FRANKLIN  A DIVISION OF NATIONAL CITY BANK**
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1467 E ABBOTTSON ST
Carson, CA  90746

**ADDITIONAL COVENANTS.**   In addition to the covenants and agreements made in the Security
instrument, Borrower and Lender further covenant and agree as follows:

Borrower can make a partial prepayment at anytime without paying any charge.  Borrower may make a
full prepayment at any time subject to a prepayment charge as follows:

If within the first    24    months after the date Borrower executes the Note, Borrower makes a full
prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note),
Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge on any amount prepaid
in any 12 month period in excess of 20% of the unpaid balance. The prepayment charge will equal the interest
that would accrue during a six-month period on the Excess Principal calculated at the rate of interest in effect
under the terms of the Note at the time of the full prepayment.

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a
penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Prepayment Rider.

_____ (Seal)        _____ (Seal)
OKECHUKWU OBIOMA UKAEGBE    -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                        -Borrower

**Adjustable Rate Prepayment Rider - First Lien – AK, AL, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, KS, LA, MA, MD, MN,
MT, ND, NE, NH, NJ, NM, NV, NY, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, VT, WA, WY**

REDACTED                                              REDACTED

06  2387430

# EXHIBIT  2

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October 12, 2006                    INGLEWOOD                    California
[Date]                               [City]                        [State]

1467 E ABBOTTSON ST
Carson, CA  90746

[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $472,000.00                    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is FIRST FRANKLIN  A DIVISION OF NATIONAL CITY BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.9000%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS * See ADDENDUM TO NOTE FOR INTEREST ONLY PAYMENT PERIOD.
### (A)  Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on          December 01, 2006          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on          November 01, 2036          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 150 ALLEGHENY CENTER MALL, PITTSBURGH, PA  15212

or at a different place if required by the Note Holder.

### (B)  Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 3,108.59                    . This amount may change.

### (C)  Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—
Single Family—Fannie Mae Uniform Instrument                                        Form 3520 1/01

ITEM 5750L1 (00   REDACTED                *(Page 1 of 4 pages)*          REDACTED          GreatDocs™
                                                                        To Order Call:  300-968-5775

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of          November 2008          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six months U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five and Four Tenths

percentage points (          5.4000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Change**

The interest rate I am required to pay at the first Change Date will not be greater then          9.9000% or less than          6.9000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One

percentage points (          1.0000  %) from the rate of interest I have been paying for the proceeding   6   months. My interest rate will never be greater than          12.9000 % nor less than          6.9000 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY **

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3520 1/01

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        Fifteen        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.0000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Form 3520 1/01

GreatDocs™
or Call: 1-800-968-5775

ITEM 5750L3 (0011  REDACTED

*(Page 3 of 4 pages)*

REDACTED

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)    _____ (Seal)
OKECHUKWU OBIOMA UKAEGBE    -Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

*[Sign Original Only]*

**THE PREPAYMENT NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF
AMENDS THE PREPAYMENT PROVISIONS OF THIS NOTE**

Initials    Initials    Initials    Initials    Initials    Initials

Form 3520 1/01

Pay to the order of
First Franklin Financial Corporation
Without Recourse
First Franklin, a division of
National City Bank
By:
Heather Miller, Funder

Pay to the order of

_____

Without Recourse
First Franklin Financial Corporation
By:
Heather Miller, Funder

# EXHIBIT  3



**This page is part of your document - DO NOT DISCARD**



## 20090092041

REDACTED

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/23/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID· | 14.00 |

## TITLE(S) : ASSIGNMENT TRUST DEED



REDACTED

**SEQ:
04**

DAR - Title Company (Hard Copy)

REDACTED

**THIS FORM IS NOT TO BE DUPLICATED**



2

REDACTED

*20090092041*

01/23/2009

PREPARED BY SECURITY
CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
  *FIRST AM. LOANSTAR TRUSTEE SVC*
  *ONE FIRST AMERICAN WAY, # 250*
  *WESTLAKE, TX 76262*
  *PH: (800) 795-5042*
  *ATT: KYLE FORSGREN*
RECORDING REQUESTED BY
*LaSalle Bank National Association, as
Trustee for First Franklin Mortgage
Loan Trust, Mortgage Loan Asset-Backed
Certificates, Series 2006-FF18*

REDACTED

# CALIFORNIA

LOAN NO.  REDACTED
POOL NO.
COUNTY  *LOS ANGELES*

## CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
AS NOMINEE FOR FIRST FRANKLIN A DIVISION OF NATIONAL CITY BANK,*

(Assignor)
located at  *2150 NORTH 1ST STREET, SAN JOSE CA 95131*
assigns to  *LaSalle Bank National Association, as Trustee for First Franklin
Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FF18
150 ALLEGHENY CENTER  PITTSBURGH, PA 15212*

all beneficial interest under that certain Deed of Trust dated  *OCTOBER
12, 2006*          executed by *OKECHUKWU OBIOMA UKAEGBE, AN UNMARRIED MAN*

Trustor, to  *LANDAMERICA GATEWAY*

Trustee, and recorded as Instrument No.  *06 2387430*          , on
*OCTOBER 27, 2006*  , in Book _____, Page _____,
of  Official Records in the County Recorder's Office of the County of _____
*LOS ANGELES*  , State of California, describing land therein as:
  *AS DESCRIBED ON SAID DEED OF TRUST REFERRED TO HEREIN.*

REDACTED

**Page 1 of 2**

ll

3

TOGETHER with the note or notes therein described or referred to, the money due and to become due with interest.

DATED: *DECEMBER 29, 2008* BUT EFFECTIVE _____ *OCTOBER 25, 2006* .

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(MERS) AS NOMINEE FOR FIRST FRANKLIN A DIVISION
OF NATIONAL CITY BANK

_____        _____
                                 NATALIE SIMMONS
                                 *ASST SECRETARY FOR ASSIGNMENTS*

STATE OF    *IDAHO* _____ )
                            ) ss
COUNTY OF   *BONNEVILLE* ____ )

On *DECEMBER 29, 2008* _____ before me, *KRYSTAL HALL* _____,
personally appeared _____ *NATALIE SIMMONS* _____
_____, *ASST SECRETARY FOR ASSIGNMENTS* ____ and _____
_____, _____ personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signatures(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____

*KRYSTAL HALL   (COMMISSION EXP. 11-14-11)*
Name (Typed or Printed)
NOTARY PUBLIC

KRYSTAL HALL
NOTARY PUBLIC
STATE OF IDAHO

REDACTED
Doc ID:   003020020019  Type: LAN
BK **4567** PG **169-187**

*Record's return to:*
## Shipman & Goodwin LLP
### Counselors at Law
### One Constitution Plaza
### Hartford, Connecticut 06103-1919 *CXP.*

## AFFIDAVIT

The undersigned, Charles F. Pedersen, a Vice President of U.S. Bank National Association ("USB"), and James Basinger, a Senior Vice President of Bank of America, N.A. ("BoA"; BoA and USB each a "Bank"), being duly sworn, each deposes and says that:

1.    I am authorized to execute this Affidavit on behalf of my Bank, and am doing so solely in my capacity as an authorized officer of such Bank.

2.    I have personal knowledge of the matters described in this Affidavit.

3.    Pursuant to a Purchase Agreement by and among Bank of America, N.A., Bank of America (GSS) Limited, Bank of America National Trust Delaware, U.S. Bank National Association, Elavon Financial Services Limited and U.S. Bank Trust National Association, USB acquired BoA's securitization trust administration business (the "Acquired Assets").

4.    The Acquired Assets included all of the mortgage-backed transactions described on Schedule A attached hereto (the "Mortgage-Backed Transactions").

5.    Accordingly, USB has succeeded BoA as trustee in the Mortgage-Backed Transactions.

I CERTIFY THIS TO BE A TRUE COPY OF THE DOCUMENT RECORDED IN THE WEST HARTFORD LAND RECORDS. DATED AT WEST HARTFORD, CT THIS _10th_ DAY OF _March 2011_
_V 4567 PG 169_

*Essie J. Laberot*
Assistant Town Clerk

Witnesses:

Jocelyn Jerin

Sonia Thampi

Name: Charles F. Pedersen
Title:  Vice President
U.S. BANK NATIONAL ASSOCIATION

SUBSCRIBED AND SWORN TO before me this 19 day of February, 2011

JEANNE M. ESCOBEDO
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2015

Notary Public: Jeanne M. Escobedo
My Commission Expires: 1-31-2015

Witnesses:

Curt Kendall

Harrison Thurston

Name: James Basinger
Title:  Senior Vice President
BANK OF AMERICA, N.A.

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

I, James E. Dwiggins, a Notary Public for said State and County do hereby certify that James Basinger, Curt Kendall and Harrison Thurston, all personally known to me, did appear before me this date and executed the foregoing instrument.

SUBSCRIBED AND SWORN TO before me this 11th day of February, 2011

Notary Public: James E. Dwiggins
My Commission Expires: May 02, 2015

## SCHEDULE A

| Long Name of Transaction (Series) |
|---|
| ACGS 2004, LLC Series 2004-1 Secured Notes |
| American Tower Trust I Commercial Mortgage Pass-Through Certificates, Series 2007-1 |
| Amresco Commercial Mortgage Funding I Corporation Mortgage Pass-Through Certificates Series1997-C1 |
| Anthracite CDO II Depositor, LLC Commercial Mortgage Pass-Through Certificates Series 2002-WGL-1 |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1995-D1 |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1995-MD IV |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1996-D2 |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1996-D3 |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1996-MD VI |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1997-D4 |
| Banc One/FCCC Commercial Mortgage Loan Trust Commercial Mortgage Pass-Through Certificates Series 2000-C1 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1998-C1 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2002-PBW1 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2003-PWR2 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2003-TOP10 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-PWR3 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-PWR4 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-PWR5 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-PWR6 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-PWR10 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-PWR7 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-PWR8 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-PWR9 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2006-PWR11 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2006-PWR12 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2006-PWR13 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2006-PWR14 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2007-PWR15 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2007-PWR16 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2007-PWR17 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2007-PWR18 |
| Bedford Capital Trust 2001-1 |
| Calwest Industrial Trust Commercial Mortgage Pass-Through Certificates, Series 2002-CALW |
| Capco America Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1998-D7 |
| Capital Lease Funding Securitization L.P. Corporate Credit-Backed Pass-Through Certificates Series 1997-CTL1 |
| CARS CNI-2 L.P Triple Net Lease Mortgage Notes, Series 2003-1 |
| CD 2005-CD1 Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2005-CD1 |
| CD 2006-CD2 Commercial Mortgage Pass-Through Certificates |
| CD 2006-CD3 Commercial Mortgage Pass-Through Certificates |
| CD 2007-CD4 Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates Series CD 2007-CD4 |
| CD 2007-CD5 Commercial Mortgage Pass-Through Certificates |
| CDC Commercial Mortgage Trust 2002-FX1 Commercial Mortgage Pass-Through Certificates, Series 2002-FX1 |
| Chandler Fashion Center A/B Note |

| |
|---|
| Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 1999-2 |
| Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2000-2 |
| Chrysler Building Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2001-C3A |
| Citigroup Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-C1 |
| Citigroup Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-C3 |
| Citigroup Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-EMG |
| Citigroup Commercial Mortgage Trust 2006-C4 Commercial Mortgage Pass-Through Certificates Series 2006-C4 |
| Citigroup Commercial Mortgage Trust 2006-C5 Commercial Mortgage Pass-Through Certificates Series 2006-C5 |
| Citigroup Commercial Mortgage Trust 2006-FL2 Commercial Mortgage Pass-Through Certificates, Series 2006-FL2 |
| Citigroup Commercial Mortgage Trust 2007-C6 Commercial Mortgage Pass-Through Certificates Series 2007-C6 |
| Coastal Securities SBA RRIO Trust |
| COBALT CMBS Commercial Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1 |
| COBALT CMBS Commercial Mortgage Trust 2007-C2, Commercial Mortgage Pass-Through Certificates, Series 2007-C2 |
| COBALT CMBS Commercial Mortgage Trust 2007-C3, Commercial Mortgage Pass-Through Certificates, Series 2007-C3 |
| COMM 1999-1 Commercial Mortgage Pass-Through Certificates |
| COMM 2002-WFA Commercial Mortgage Pass-Through Certificates |
| COMM 2005-FL10 Commercial Mortgage Pass-Through Certificates |
| COMM 2006-CNL2 Commercial Mortgage-Backed Certificates |
| COMM 2006-FL12 Commercial Mortgage Pass-Through Certificates |
| COMM 2007-FL14 Commercial Mortgage Pass-Through Certificates |
| Commercial Mortgage Acceptance Corp. Commercial Mortgage Pass-Through Certificates Series 1998-C1 |
| Commercial Mortgage Acceptance Corp. Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| Commercial Mortgage Asset Trust Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| Commercial Mortgage Asset Trust Commercial Mortgage Pass-Through Certificates Series 1999-C2 |
| Commercial Mortgage Lease-Backed Securities LLC Commercial Mortgage Lease-Backed Certificates Series 2001-CMLB-1 |
| Commercial Mortgage Trust 2007-GG11, Commercial Mortgage Pass-Through Certificates, Series 2007-GG11 |
| Countrywide Commercial Mortgage Trust 2007-MF1 Commercial Mortgage Pass-Through Certificates Series 2007-MF1 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 1997-C2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2001-CK3 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-C5 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-TFL2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-TFL1 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-TFL2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-C4 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-TFL2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2007-C2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2007-C3 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2007-C4 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series Corp 2002-CP3 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series2006-C2 |
| Dadeland Mall Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2002-C2A |
| DEUTSCHE MORTGAGE & ASSET RECEIVING CORPORATION Commercial Mortgage Pass-Through Certificates Series 1998-C1 |
| DEUTSCHE MORTGAGE & ASSET RECEIVING CORPORATION Multifamily Mortgage Pass-Through Certificates Series 2009-K3 |
| DLJ Commercial Mortgage Corp. Commercial Mortgage Pass-Through Certificates Series 1998-CG1 |
| DLJ Commercial Mortgage Corp. Commercial Mortgage Pass-Through Certificates Series 1999-CG1 |
| DLJ Commercial Mortgage Corp. Commercial Mortgage Pass-Through Certificates Series 1999-CG2 |
| DLJ Commercial Mortgage Corp. Commercial Mortgage Pass-Through Certificates Series 1999-CG3 |

| |
|---|
| FFCA Secured Franchise Loan Trust Certificates Series 1999-1 |
| FFCA Secured Franchise Loan Trust Certificates Series 1999-2 |
| FFCA Secured Franchise Loan Trust Certificates Series 2000-1 |
| First Union Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1997-C2 |
| First Union Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| First Union Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1999-C2 |
| Flik Depositor, Inc. Commercial Mortgage Pass-Through Certificates, Series 2003-EPR |
| Four Times Square Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-4TS |
| G3 STRATEGIC INVESTMENTS LP Mortgage Pass-Through Certificates Series 2002-WL1 |
| Gallery at Harborplace Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2000-C5C |
| GE Capital Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates Series 2001-1 |
| GE Capital Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates Series 2001-3 |
| GE Capital Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates Series 2002-2A |
| GE Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates Series 2006-C1 |
| GFCM LLC Commercial Mortgage Pass-Through Certificates, Series 2003-1 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 1998-C1 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 1998-C2 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 1999-C2I |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2000-C1 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2000-C3 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2001-C2 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2002-C2 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2003-C1 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2003-C3 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2003-C3 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2004-C2 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2005-C1 |
| Greenwich Capital Commercial Funding Corp. Commercial Mortgage Trust 2006-FL4, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2002-C1, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2003-C1, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2003-C2, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2004-FL2, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2004-GG1, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2005-FL3, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2005-GG3, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2005-GG5, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2006-GG7, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2007-GG9, Commercial Mortgage Pass-Through Certificates, |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 1997-GL I |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 1998-C1 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2001-GLIII |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2001-ROCK |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2004-C1 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2004-GG2 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2005-ROCK |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2006-GG6 |

| |
|---|
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2006-GG8 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2007-GG10 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates, Series 2006-GSFL VIII |
| Hometown Commercial Trust 2006-1 Certificates of Beneficial Ownership, Series 2006-1 |
| HVB MORTGAGE CAPITAL CORP. Commercial Mortgage Pass-Through Ccrtifieates Series 2003-FL1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2001-C1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2001-CIB3 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2002-C1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2002-C2 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2002-C3 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2002-CIBC5 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-C1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-CIBC6 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-CIBC7 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-LNI |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-ML1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certifieates Series 2004-C2 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-CIBC9 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-LN2 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-PNCI |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-CB12 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP2 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP3 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP4 |
| J.P. Morgan·Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP5 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-CBIC14 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-CIBC15 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-CIBC17 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-LDP7 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2007-CIBC19 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2008-C2 |
| J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP8 Commercial Mortgage Pass-Through Certificates Series 2006-LDP8 |
| J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP9 Commercial Mortgage Pass-Through Certificates Series 2006-LDP9 |
| J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP11 Commercial Mortgage Pass-Through Certificates Series 2007- |
| J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP12 Commercial Mortgage Pass-Through Certificates Series 2007- |
| JB Bond Securitization Trust Series 2005-S4 |
| JP Morgan Commercial Mortgage Finance Corp. Mortgage Pass-Through Certificates Series 1997-C5 |
| JP Morgan Commercial Mortgage Finance Corp. Mortgage Pass-Through Certificates Series 2000-C9 |
| LaSalle Commercial Mortgage Securities Trust 2005-MF1 Commercial Mortgage Pass-Through Certificates Series 2005-MF1 |
| LaSalle Commercial Mortgage Securities Trust 2006-MF2 Commercial Mortgage Pass-Through Certificates Series 2006-MF2 |
| LaSalle Commercial Mortgage Securities Trust 2006-MF3 Commercial Mortgage Pass-Through Certificates Series 2006-MF3 |
| LaSalle Commercial Mortgage Securities Trust 2006-MF4 Commercial Mortgage Pass-Through Certificates Series 2006-MF4 |
| LaSalle Commercial Mortgage Securities Trust 2007-MF5 Commercial Mortgage Pass-Through Certificates Series 2007-MF5 |
| LB Commercial Mortgage Trust 1999-C1 Commercial Mortgage Pass-Through Certificates, Series 1999-C1 |
| LB Commercial Mortgage Trust 1999-C2 Commercial Mortgage Pass-Through Certificates, Series 1999-C2 |
| LB Commercial Mortgage Trust 2007-C3 Commercial Mortgage Pass-Through Certificates, Series 2007-C3 |
| LB Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 1998-C1 |

| |
|---|
| LB Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 1998-C4 |
| LB-UBS 299 Park Avenue Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2001-C7A |
| LB-UBS Commercial Mortgage Trust 2000-C3 Commercial Mortgage Pass-Through Certificates, Series 2000-C3 |
| LB-UBS Commercial Mortgage Trust 2000-C4 Commercial Mortgage Pass-Through Certificates, Series 2000-C4 |
| LB-UBS Commercial Mortgage Trust 2000-C5 Commercial Mortgage Pass-Through Certificates, Series 2000-C5 |
| LB-UBS Commercial Mortgage Trust 2001-C2 Commercial Mortgage Pass-Through Certificates, Series 2001-C2 |
| LB-UBS Commercial Mortgage Trust 2001-C3 Commercial Mortgage Pass-Through Certificates, Series 2001-C3 |
| LB-UBS Commercial Mortgage Trust 2001-C7 Commercial Mortgage Pass-Through Certificates, Series 2001-C7 |
| LB-UBS Commercial Mortgage Trust 2002-C1 Commercial Mortgage Pass-Through Certificates, Series 2002-C1 |
| LB-UBS Commercial Mortgage Trust 2002-C2 Commercial Mortgage Pass-Through Certificates, Series 2002-C2 |
| LB-UBS Commercial Mortgage Trust 2002-C4 Commercial Mortgage Pass-Through Certificates, Series 2002-C4 |
| LB-UBS Commercial Mortgage Trust 2002-C7 Commercial Mortgage Pass-Through Certificates, Series 2002-C7 |
| LB-UBS Commercial Mortgage Trust 2003-C1 Commercial Mortgage Pass-Through Certificates, Series 2003-C1 |
| LB-UBS Commercial Mortgage Trust 2003-C3 Commercial Mortgage Pass-Through Certificates, Series 2003-C3 |
| LB-UBS Commercial Mortgage Trust 2003-C5 Commercial Mortgage Pass-Through Certificates, Series 2003-C5 |
| LB-UBS Commercial Mortgage Trust 2003-C7 Commercial Mortgage Pass-Through Certificates, Series 2003-C7 |
| LB-UBS Commercial Mortgage Trust 2003-C8 Commercial Mortgage Pass-Through Certificates, Series 2003-C8 |
| LB-UBS Commercial Mortgage Trust 2004-C1 Commercial Mortgage Pass-Through Certificates, Series 2004-C1 |
| LB-UBS Commercial Mortgage Trust 2004-C4 Commercial Mortgage Pass-Through Certificates, Series 2004-C4 |
| LB-UBS Commercial Mortgage Trust 2004-C6 Commercial Mortgage Pass-Through Certificates, Series 2004-C6 |
| LB-UBS Commercial Mortgage Trust 2004-C7 Commercial Mortgage Pass-Through Certificates, Series 2004-C7 |
| LB-UBS Commercial Mortgage Trust 2004-C8 Commercial Mortgage Pass-Through Certificates, Series 2004-C8 |
| LB-UBS Commercial Mortgage Trust 2005-C1 Commercial Mortgage Pass-Through Certificates, Series 2005-C1 |
| LB-UBS Commercial Mortgage Trust 2005-C2 Commercial Mortgage Pass-Through Certificates, Series 2005-C2 |
| LB-UBS Commercial Mortgage Trust 2005-C3 Commercial Mortgage Pass-Through Certificates, Series 2005-C3 |
| LB-UBS Commercial Mortgage Trust 2005-C5 Commercial Mortgage Pass-Through Certificates, Series 2005-C5 |
| LB-UBS Commercial Mortgage Trust 2005-C7 Commercial Mortgage Pass-Through Certificates, Series 2005-C7 |
| LB-UBS Commercial Mortgage Trust 2006-C1 Commercial Mortgage Pass-Through Certificates, Series 2006-C1 |
| LB-UBS Commercial Mortgage Trust 2006-C3 Commercial Mortgage Pass-Through Certificates, Series 2006-C3 |
| LB-UBS Commercial Mortgage Trust 2006-C4 Commercial Mortgage Pass-Through Certificates, Series 2006-C4 |
| LB-UBS Commercial Mortgage Trust 2006-C6 Commercial Mortgage Pass-Through Certificates, Series 2006-C6 |
| LB-UBS Commercial Mortgage Trust 2006-C7 Commercial Mortgage Pass-Through Certificates, Series 2006-C7 |
| LB-UBS Commercial Mortgage Trust 2007-C1 Commercial Mortgage Pass-Through Certificates, Series 2007-C1 |
| LB-UBS Commercial Mortgage Trust 2007-C2 Commercial Mortgage Pass-Through Certificates, Series 2007-C2 |
| LB-UBS Commercial Mortgage Trust 2007-C6 Commercial Mortgage Pass-Through Certificates, Series 2007-C6 |
| LB-UBS Commercial Mortgage Trust 2007-C7 Commercial Mortgage Pass-Through Certificates, Series 2007-C7 |
| LB-UBS Commercial Mortgage Trust 2008-C1 Commercial Mortgage Pass-Through Certificates, Series 2008-C1 |
| LB-UBS Westfield Trust, Commercial Mortgage Pass-Through Certificates, Series 2001-WM |
| LNR CFL 2004-1 Ltd. CMBS Resecuritization Notes, Series 2004-CFL |
| Merrill Lynch Floating Trust Pass-Through Certificates, Series 2006-1 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC Commercial Mortgage Pass-Through Certificates Series 2004-C1 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC Commercial Mortgage Pass-Through Certificates Series 2005-C3 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC Commercial Mortgage Pass-Through Certificates Series 2006-C4 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC Commercial Mortgage Pass-Through Certificates Series 2007-C5 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC. Commercial Mortgage Pass-Through Certificates Series 2002-MW1 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC. Commercial Mortgage Pass-Through Certificates Series 2005-CKI1 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC. Commercial Mortgage Pass-Through Certificates Series 2005-LC1 |

| |
|---|
| Merrill Lynch Mortgage Trust 2006-C1 Commercial Mortgage Pass-Through Certificates Series 2006-C1 |
| Merrill Lynch Mortgage Trust 2006-C2 Commercial Mortgage Pass-Through Certificates Series 2006-C2 |
| Merrill Lynch Mortgage Trust 2008-C1 Commercial Mortgage Pass Through Certificates, Series 2008-C1 |
| Minnesota Bond Securitization Trust Series 2004-S1 |
| Minnesota Bond Securitization Trust Series 2004-S2 |
| ML-CFC Commercial Mortgage Trust 2006-1 Commercial Mortgage Pass-Through Certificates Series 2006-1 |
| ML-CFC Commercial Mortgage Trust 2006-2 Commercial Mortgage Pass-Through Certificates Series 2006-2 |
| ML-CFC Commercial Mortgage Trust 2006-4 Commercial Mortgage Pass-Through Certificates Series 2006-4 |
| ML-CFC Commercial Mortgage Trust 2007-6 Commercial Mortgage Pass-Through Certificates Series 2007-6 |
| ML-CFC Commercial Mortgage Trust 2007-7 Commercial Mortgage Pass-Through Certificates Series 2007-7 |
| ML-CFC Commercial Mortgage Trust 2007-8 Commercial Mortgage Pass-Through Certificates Series 2007-8 |
| MLMI98-CI-F, Commercial Mortgage Certificates, Series 2006-1 Trust |
| MONITRONICS FUNDING LP Series 2007-1 |
| MORGAN STANLEY CAPITAL I INC. Commercial Mortgage Pass-Through Certificates Series 2007-XLF |
| MORGAN STANLEY CAPITAL I INC. Commercial Mortgage Pass-Through Certificates Series FB 2005-1 |
| MORGAN STANLEY CAPITAL I INC. Commercial Mortgage Pass-Through Certificates Series2005-XLF |
| MSDWMC Owner Trust 2000-F1 Notes and Participating Interests |
| MSDWMC Owner Trust 2003-F1 Notes, Series 2003-F1 |
| NATIONSLINK FUNDING CORPORATION Commercial Loan Pass-Through Certificates Series 1999-LTL-1 |
| NATIONSLINK FUNDING CORPORATION Commercial Mortgage Pass-Through Certiticates Series 1999-SL |
| Nomura Asset Securities Corporation Commercial Mortgage Pass-Through Certificates Series 1996-MD V |
| Nomura Asset Securities Corporation Commercial Mortgage Pass-Through Certificates Series 1998-D6 |
| Nortel Networks Lease Pass-Through Trust Pass-Through Trust Certificates, Series 2001-1 |
| PROTECTIVE FINANCE CORPORATION Commercial Mortgage Pass-Through Certificates Series 2007-PL |
| Protective Finance Corporation II Commercial Mortgage FASIT Certificates, Series I |
| Providence Place Mall Pass-Through Certificates |
| Prudential Securities Secured Financing Corporation Commercial Mortgage Pass-Through Certificates Series 1995-MCF-2 |
| Prudential Securities Secured Financing Corporation Commercial Mortgage Pass-Through Certificates Series 2003-PWR1 |
| Rite Aid Pass-Through Certificates Series 1999-1 |
| ROCK 2001-CI Commercial Mortgage Pass-Through Certificates Series 200 l-C 1 |
| SALOMON BROTHERS MORTGAGE SECURITIES VII, INC. Commercial Mortgage Pass-Through Certificates Series 2000-NL1 |
| SALOMON BROTHERS MORTGAGE SECURITIES VII, INC. Commercial Mortgage Pass-Through Certificates Series 2001-MM |
| SALOMON BROTHERS MORTGAGE SECURITIES VII, INC. Commercial Mortgage Pass-Through Certificates Series Inc 2000-C3 |
| Southbury Credit Lease Backed Pass-Through Certificates, Series 1999-CTL1 |
| STRUCTURED ASSET SECURITIES CORPORATION Commercial Mortgage Pass-Through Certificates Series 1997-LL I |
| STRUCTURED ASSET SECURITIES CORPORATION Commercial Mortgage Pass-Through Certificates Series 2002-C5 |
| STRUCTURED ASSET SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2004-C3 |
| STRUCTURED ASSET SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2005-C6 |
| Structured Asset Securities Corporation Multiclass Pass-Through Certificates Series 1996-CFL |
| THE PENN MUTUAL LIFE INSURANCE COMPANY and THE PENN INSURANCE AND ANNUITY COMPANY 1996-PML |
| TIAA Seasoned Commercial Mortgage Trust 2007-C4 Commercial Mortgage Pass-Through Certificates, Series 2007-C4 |
| TimberStar Trust I Commercial Mortgage Pass-Through Certificates Series 2006-1 |
| Tuckahoe Credit Lease Backed Pass-Through Certificates, Series 200 l-CTL1 |
| TW Hotel Funding 2005, LLC Commercial Mortgage Pass-Through Certificates Series 2005-LUX |
| U.S. TRADE FUNDING CORP. 4.26% TRADE TRUST CERTIFICATES Series 2002-A |
| UBS 400 Atlantic Street Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2002-C1A |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2002-C1 |

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2002-C2

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2003-C3

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2003-C5

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2003-C6

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2003-C7

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2003-C8

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2004-C10

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2004-C11

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2004-C12

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2004-C14

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2004-C15

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2005-C18 .

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2005-C19

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2005-C20

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2005-C22

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C23

WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2006-C24

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C25

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C26

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C27

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C29

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2007-C30

Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2007-C32

Walnut Corporation Mortgage PasswThrough Certificates

Washington Mutual Commercial Mortgage Trust 2003-C1 Commercial Mortgage Pass-Through Certificates, Series 2003-C1

Washington Mutual Commercial Mortgage Trust 2005-C1 Commercial Mortgage Pass-Through Certificates, Series 2005-C1

Washington Mutual Grantor Trust Certificate Series 2001-1

Washington Mutual Multifamily Mortgage 2001-1 Limited Secured Notes, Series 2001-1

Westfield Shoppingtown West County Mall Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2003-C3A

Accredited Mortgage Loan Trust 2005-3

ASG Resecuritization Trust 2009-1, REMIC Notes Series 2009-1

ASG Resecuritization Trust 2009-3, REMIC Notes Series 2009-3

ABFC asset-Backed Certificates, Series 2002-SB1

Asset Backed Funding Corporation NIM Trust 2002-SB1

Banc of America Mortgage 2008-A Trust, Mortgage Pass-Through Certificates Series 2008-A

BC50 Trust-I

BEAR STEARNS ASSET BACKED SECURITIES TRUST 2004-1 ASSET-BACKED CERTIFICATES, SERIES 2004-1

BEAR STEARNS ASSET BACKED SECURITIES TRUST 2005-2 ASSET-BACKED CERTIFICATES, SERIES 2005-2

Bear Stearns Asset Backed Securities I Trust 2005-HE7, Asset-Backed Certificates, Series 2005-HE7

Bear Stearns Asset Backed Securities Trust 2004-HE1 Asset-Backed Certificates, Series 2004-HE1

Bear Stearns Asset Backed Securities Trust 2004-HE3 Asset-Backed Certificates, Series 2004-HE3

BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE4 ASSET-BACKED CERTIFICATES, SERIES 2004-HE4

Bear Stearns Asset Backed Securities I Trust 2005-FR1, Asset-Backed Certificates, Series 2005-FR1

Bear Stearns Asset Backed Securities I Trust 2005-HE1, Asset-Backed Certificates, Series 2005-HE1

Bear Stearns Asset Backed Securities I Trust 2005-HE11, Asset-Backed Certificates, Series 2005-HE11

Bear Stearns Asset Backed Securities I Trust 2005-HE5, Asset-Backed Certificates, Series 2005-HE5

Bear Stearns Asset Backed Securities I Trust 2005-HE8, Asset-Backed Certificates, Series 2005-HE8

| |
|---|
| Bear Stearns Asset Backed Securities I Trust 2006-EC2 Asset-Backed Certificates, Series 2006-EC2 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE6 Asset Backed Certificates, Series 2006-HE6 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE3 Asset-Backed Certificates, Series 2007-HE3 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2001-3 ASSET-BACKED CERTIFICATES, SERIES 2001-3 |
| Bear Stearns Asset Backed Securities Trust 2003-ABF1 Mortgage Pass-Through Certificates, Series 2003-ABF1 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2004-2 ASSET-BACKED CERTIFICATES, SERIES 2004-2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-FR2 ASSET-BACKED CERTIFICATES, SERIES 2004-FR2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE11 ASSET-BACKED CERTIFICATES, SERIES 2004-HE11 |
| Bear Stearns Asset Backed Securities Trust 2004-HE2 Asset-Backed Certificates, Series 2004-HE2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE5 ASSET-BACKED CERTIFICATES, SERIES 2004-HE5 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE8 ASSET-BACKED CERTIFICATES, SERIES 2004-HE8 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE9 ASSET-BACKED CERTIFICATES, SERIES 2004-HE9 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2005-3 ASSET-BACKED CERTIFICATES, SERIES 2005-3 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-HE10 ASSET-BACKED CERTIFICATES, SERIES 2005-HE10 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE2, Asset-Backed Certificates, Series 2005-HE2 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE3, Asset-Backed Certificates, Series 2005-HE3 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE4, Asset-Backed Certificates, Series 2005-HE4 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE9, Asset-Backed Certificates, Series 2005-HE9 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2006-1 ASSET-BACKED CERTIFICATES, SERIES 2006-1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2006-AQ1 ASSET-BACKED CERTIFICATES, SERIES 2006-AQ1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2006-HE1 ASSET-BACKED CERTIFICATES, SERIES 2006-HE1 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE10 Asset-Backed Certificates, Series 2006-HE10 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE2 Asset-Backed Certificates, Series 2006-HE2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2006-HE5 ASSET-BACKED CERTIFICATES, SERIES 2006-HE5 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE8 Asset-Backed Certificates, Series 2006-HE8 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE9 Asset-Backed Certificates, Series 2006-HE9 |
| Bear Stearns Asset Backed Securities I Trust 2006-PC1 Asset-Backed Certificates, Series 2006-PC1 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE2 Asset-Backed Certificates, Series 2007-HE2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ1 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-FR3 ASSET-BACKED CERTIFICATES, SERIES 2004-FR3 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-FR1 ASSET-BACKED CERTIFICATES, SERIES 2004-FR1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE6 ASSET-BACKED CERTIFICATES, SERIES 2004-HE6 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE7 ASSET-BACKED CERTIFICATES, SERIES 2004-HE7 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2005-4 ASSET-BACKED CERTIFICATES, SERIES 2005-4 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ1 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-EC1 ASSET-BACKED CERTIFICATES, SERIES 2005-EC1 |
| Bear Stearns Asset Backed Securities I Trust 2006-EC1 Asset-Backed Certificates, Series 2006-EC1 |
| Bear Stearns Asset Backed Securities I Trust 2007-AQ1 Asset-Backed Certificates, Series 2007-AQ1 |
| Bear Stearns Asset Backed Securities I Trust 2007-FS1 Asset-Backed Certificates, Series 2007-FS1 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE1 Asset-Backed Certificates, Series 2007-HE1 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE5 Asset-Backed Certificates, Series 2007-HE5 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE6 Asset-Backed Certificates, Series 2007-HE6 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE7 Asset-Backed Certificates, Series 2007-HE7 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE7 Asset-Backed Certificates, Series 2006-HE7 |
| Bear Stearns Asset Backed Securities Trust 2003-HE1 Asset-Backed Certificates, Series 2003-HE1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-HE6 ASSET-BACKED CERTIFICATES, SERIES 2005-HE6 |
| Bear Stearns Asset Backed Securities I Trust 2004-HE10 Asset-Backed Certificates, Series 2004-HE10 |

| |
|---|
| Bear Stearns Asset Backed Securities I Trust 2005-HE12 Asset-Backed Certificates, Series 2005-HE12 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-TC2 ASSET-BACKED CERTIFICATES, SERIES 2005-TC2 |
| Bear Stearns Asset Backed Securities I Trust 2007-AQ2 Asset-Backed Certificates, Series 2007-AQ2 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4 |
| Bear Stearns Mortgage Funding Trust 2006-SL2 Mortgage-Backed Certificates, Series 2006-SL2 |
| Bear Stearns Mortgage Funding Trust 2006-SL3 Mortgage-Backed Certificates, Series 2006-SL3 |
| Bear Stearns Mortgage Funding Trust 2006-SL4 Mortgage-Backed Certificates, Series 2006-SL4 |
| Bear Stearns Mortgage Funding Trust 2006-SL5 Mortgage-Backed Certificates, Series 2006-SL5 |
| Bear Stearns Mortgage Funding Trust 2006-SL6 Mortgage-Backed Certificates, Series 2006-SL6 |
| Bear Stearns Mortgage Funding Trust 2007-SL1 Mortgage-Backed Certificates, Series 2007-SL1 |
| Bear Stearns Mortgage Funding Trust 2007-SL2 Mortgage-Backed Certificates, Series 2007-SL2 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-16 SERIES 2006-16 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-19 |
| BSABS AQ1 NIM TRUST 2005-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS AQ2 NIM TRUST 2005-2, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS EC1 NIM TRUST 2005-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS EC1 NIM TRUST 2006-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS EC2 NIM Trust 2006-2, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS FR1 NIM Trust 2004-1, Class A-1, Class A-2 and Class C Notes |
| BSABS FR1 NIM TRUST 2005-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS FR2 NIM Trust 2004-2, Class A-1, Class A-2, Class A-3 and Class C Notes |
| BSABS FR3 NIM Trust 2004-3, Class A-1, Class A-2, Class A-3, Class A-4 and Class C Notes |
| BSABS HE1 NIM Trust 2003-1, Asset-Backed Certificates |
| BSABS HE1 NIM Trust 2004-1, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE1 NIM Trust 2005-1, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE1 NIM TRUST 2006-1 |
| BSABS HE10 NIM Trust 2004-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |
| BSABS HE10 NIM TRUST 2005-10 |
| BSABS HE11 NIM TRUST 2004-11 |
| BSABS HE11 NIM Trust 2005-11, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE12 NIM Trust 2005-12, Class A-1 Notes, Class A-2 Notes and Class A-3 Notes |
| BSABS HE2 NIM Trust 2004-2, Class A-1 Notes, Class A-2 Notes, Class Inverse IO Notes and Class C Notes |
| BSABS HE2 NIM TRUST 2005-2, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes, Class C Notes |
| BSABS HE2 NIM TRUST 2006-2, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE3 NIM Trust 2004-3, Class A-1 Notes, Class A-2 Notes, Class Inverse IO Notes and Class C Notes |
| BSABS HE3 NIM TRUST 2005-3, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE4 NIM Trust 2004-4, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |
| BSABS HE4 NIM TRUST 2005-4, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE5 NIM Trust 2004-5, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |
| BSABS HE5 NIM TRUST 2005-5, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE6 NIM Trust 2004-6, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE6 NIM TRUST 2005-6, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE7 NIM Trust 2004-7, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE7 NIM TRUST 2005-7, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE8 NIM Trust 2004-8, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |
| BSABS HE8 NIM TRUST 2005-8, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE9 NIM Trust 2004-9, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |

| |
|---|
| BSABS HE9 NIM TRUST 2005-9, Class A-1, Class A-2, Class A-3 |
| BSABS PC1 NIM Trust 2006-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS TC1 NIM Trust 2005-1, Class A-1 Notes, Class A-2 Notes and Class A-3 Notes |
| BSABS TC2 NIM Trust 2005-2, Class A-1 Notes, Class A-2 Notes and Class A-3 Notes |
| Bear Stearns Structured Products Inc. NIM Trust 2006-3, Series 2006-3 |
| Bear Stearns Structured Products Inc. NIM Trust 2005-23 Notes, Series 2005-23 |
| Bear Stearns Structured Products Inc. NIM Trust 2005-27, Series 2005-27 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2005-29 SERIES 2005-29 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2005-32, SERIES 2005-32 |
| BSSP Nim Trust 2005-7 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-10, SERIES 2006-10 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-11 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-6, SERIES 2006-6 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-8 NOTES, SERIES 2006-8 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-TC1 ASSET-BACKED CERTIFICATES, SERIES 2005-TC1 |
| Bear Stearns Mortgage Funding Trust 2006-SL1 Mortgage-Backed Certificates, Series 2006-SL1 |
| BERKELEY FEDERAL TRUST RECEIPT PASS-THROUGH CERTIFICATES, SERIES 1994-1 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-17, Series 2006-17 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-18, Series 2006-18 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-20, Series 2006-20 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-21, Series 2006-21 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-22 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-24, Series 2006-24 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-24, Series 2006-24 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2007-N3 NOTES |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N1 |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N2 |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N4 Notes |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N5 Notes |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2007-N6 NOTES |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2007-N7 NOTES |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N8 Notes |
| C-BASS 2006-CB7NIM Trust, Series 2006-CB7NIM Notes |
| C-BASS 2006-CB9NIM Trust, Series 2006-CB9NIM Notes |
| C-BASS 2007-CB2NIM Trust, Series 2007-CB2NIM Notes |
| C-BASS 2007-CB4NIM Trust, Series 2007-CB4NIM Notes |
| C-BASS 2007-CB5NIM Trust, Series 2007-CB5NIM Notes |
| CREDIT SUISSE SEASONED LOAN TRUST 2006-1 HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-1 |
| C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-CB4 |
| C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-CB5 |
| CSFB Mortgage-Backed Notes, Series 2002-NP14 |
| DB50 2004-1 Trust |
| DB50 2005-1 Trust |
| DB50 2007-1Trust |
| DB50 HVAC 2005-1 Trust |
| Reverse Mortgage Loan Trust, Series REV 2007-2 |
| DUCAT INVESTMENT GROUP, L.P. GRANTOR TRUST, SERIES 2008-1 |

| |
|---|
| EMC MORTGAGE LOAN TRUST 2001-A MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2001-A |
| EMC MORTGAGE LOAN TRUST 2002-B MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2002-B |
| EMC MORTGAGE LOAN TRUST 2003-A MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2003-A |
| EMC MORTGAGE LOAN TRUST 2003-B MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2003-B |
| EMC MORTGAGE LOAN TRUST 2004-B MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-B |
| EMC MORTGAGE LOAN TRUST 2004-C MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-C |
| EMC MORTGAGE LOAN TRUST 2005-A MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-A |
| EMC MORTGAGE LOAN TRUST 2005-B MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-B |
| EMC MORTGAGE LOAN TRUST 2006-A MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-A |
| FCDB FF1 2008-1 TRUST |
| First Franklin Mortgage Loan Trust 2005-FFH2 NIM |
| First Franklin Mortgage Loan Trust 2007- 3 NIM |
| First Franklin Mortgage Loan Trust 2007-1 NIM |
| First Franklin Mortgage Loan Trust 2007-2 NIM |
| First Franklin Mortgage Loan Trust 2007-4 NIM |
| First Franklin Mortgage Loan Trust 2007-5 NIM |
| First Franklin Mortgage Loan Trust 2007-FF1-FF2 |
| First Franklin Mortgage Loan Trust 2007-H1 NIM |
| First Franklin Mortgage Loan Asset Backed Certificates 2006-FF18 |
| First Franklin Mortgage Loan Asset Backed Certificates 2007-FF1 |
| First Franklin Mortgage Loan Asset Backed Certificates 2007-FF2 |
| First Franklin Mortgage Loan Asset Backed Certificates 2007-FFA |
| First Franklin Mortgage Loan Asset Backed Certificates 2007-FFC |
| First Franklin Mtg Loan Asset Backed Certificates 2005-FFH2 |
| FCDB DBPL 2008-1 TRUST |
| FCDB DBPL 2008-2 TRUST |
| FCDB GMPL 2008-1 TRUST |
| FCDB LBPL 2008-1 TRUST |
| FCDB LBPL 2008-2 TRUST |
| FCDB MLPL 2008-1 TRUST |
| FCDB MLPL 2008-2 TRUST |
| FCDB NCPL 2008-1 TRUST |
| Power Express REO Trust 2008-1 |
| Power Express REO Trust 2008-2 |
| FRFT 2004-1 Trust |
| FRFT 2004-2 Trust |
| FRFT 2004-3 Trust |
| FRFT 2004-4 TRUST |
| FRFT 2004-5 Trust |
| FRFT 2005-1 Trust |
| FRFT 2005-2 Trust |
| Kondaur Capital Trust Series 2008-1 |
| Kondaur Capital Trust Series 2008-2 |
| Kondaur Capital Trust Series 2008-3 |
| Kondaur Capital Trust Series 2009-1 |
| LEHMAN ABS CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-1 |
| GREENPOINT MORTGAGE FUNDING TRUST 2005-HE3, ASSET-BACKED CERTIFICATES, SERIES 2005-HE3 |

| |
|---|
| LEHMAN ABS CORPORATION, HOME EQUITY LOAN ASSET-BACKED NOTES, SERIES 2005-1 |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-2 |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-4 |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-8 |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-10H |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-9 |
| Mortgage Equity Conversion Asset Trust 2006-SFG1 Mortgage-Backed Notes, Series 2006-SFG1 |
| Mortgage Equity Conversion Asset Trust 2006-SFG2 Mortgage-Backed Notes, Series 2006-SFG2 |
| Mortgage Equity Conversion Asset Trust 2006-SFG3 Mortgage-Backed Notes, Series 2006-SFG3 |
| Mortgage Equity Conversion Asset Trust 2007-FF1 Mortgage-Backed Notes, Series 2007-FF1 |
| Mortgage Equity Conversion Asset Trust 2007-FF2 Mortgage-Backed Notes, Series 2007-FF2 |
| Mortgage Equity Conversion Asset Trust 2007-FF3 Mortgage-Backed Notes, Series 2007-FF3 |
| MLMI Cayman NIM 2006-AR1, Ltd. Net Interest Margin Fixed Rate Notes, Series 2006-AR1 |
| MLMI Cayman NIM 2007-HE1, Ltd. Net Interest Margin Fixed Rate Notes, Series 2007-HE1 |
| MLMI Cayman NIM 2007-HE2, Ltd. Net Interest Margin Fixed Rate Notes, Series 2007-HE2 |
| Merrill Lynch First Franklin Mortgage Loan Trust Motgage Loan Asset-Backed Certificates, Series 2007-1 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-2 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-3 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-4 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series2007-5 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-A |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-H1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE4 |
| MLMI Trust 2002-AFC1 Asset-Backed Certificates, Series 2002-AFC1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-SL3 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-AHL1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-AR1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FF1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FM1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE3 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE6 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM3 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM4 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-WMC2 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-HE3 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-SD1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM5 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-MLN1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-HE1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-OPT1 |
| Merril Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE2 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM2 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-SL1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-SD1 |
| Morgan Stanley Mortgage Loan Trust 2006-10SL Mortgage Pass-Trhough Certificates, Series 2006-10SL |
| Morgan Stanley Mortgage Loan Trust 2006-14SL Mortgage Pass-Trhough Certificates, Series 2006-14SL |

| |
|---|
| Morgan Stanley Mortgage Loan Trust 2006-4SL Mortgage Pass-Trhough Certificates, Series 2006-4SL |
| Morgan Stanley Mortgage Loan Trust 2007-9SL Mortgage Pass-Trhough Certificates, Series 2007-9SL |
| Morgan Stanley Mortgage Re-REMIC Trust 2009-R1 Re-REMIC Pass-Through Certificates, Series 2009-R1 |
| Morgan Stanley Mortgage Loan Trust 2006-7SL Mortgage Pass-Trhough Certificates, Series 2007-4SL |
| Nomura Asset Securities Corporation Mortgage Pass-Through Certificates, Series 1994-3 |
| Old Canal Bridge 1 Trust |
| Origen Manufactured Housing Contract Senior/Subordinate Asset-Backed Certificates, Series 2001-A |
| Ownit Mortgage Loan Asset Backed Certificates 2006-3 |
| Ownit Mortgage Loan Asset Backed Certificates 2006-4 |
| Ownit Mortgage Loan Asset Backed Certificates 2006-5 |
| Ownit Mortgage Loan Asset Backed Certificates 2006-6 |
| Ownit Mortgage Loan Asset Backed Certificates 2006-7 |
| Structured Asset Mortgage Investment II Inc., Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2004-CL1 |
| Prime 2004-CL1A, Pass-Through Certificates, Series 2004-CL1A |
| Structured Asset Mortgage Investment II Inc.,Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2004-CL2 |
| RAMP 2007-RZ1 NIM Trust |
| Home Loan-Backed Notes, Series 2007-HI1 |
| Home Equity Loan-Backed Term Notes, Series 2007-HSA1 |
| Riverview HECM Pass-Through Certificates, Series 2008-1 |
| MCMCAP Homeowners' Advantage Trust I |
| MCMCAP Homeowners' Advantage Trust II |
| MCMCAP Homeowners' Advantage Trust III |
| MCMCAP Homeowners' Advantage Trust IV |
| SACO I Trust 2005-WM1 Mortgage-Backed Certificates, Series 2005-WM1 |
| SACO I TRUST 2005-WM2 MORTGAGE-BACKED CERTIFICATES, SERIES 2005-WM2 |
| SACO I TRUST 2005-WM3 MORTGAGE-BACKED CERTIFICATES, SERIES 2005-WM3 |
| SACO I Trust 2006-3 Mortgage-Backed Certificates, Series 2006-3 |
| SACO I Trust 2005-6 Mortgage-Backed Certificates, Series 2005-6 |
| SACO I Trust 2005-9 Mortgage-Backed Certificates, Series 2005-9 |
| SACO I Trust 2006-4 Mortgage-Backed Certificates, Series 2006-4 |
| Salomon Brothers Mortgage Securities VII, Inc. Mortgage Pass-Through Certificates, Series 1997-HUD2 |
| Structured Asset Securities Corporation, Mortgage pass-Through Certificates Series 2003-4 |
| SASCO NET INTEREST MARGIN NOTES, SERIES 2004-11XS, CLASS A AND CLASS S |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-13 |
| SASCO NET INTEREST MARGIN NOTES, SERIES 2004-21XS, CLASS A |
| SASCO NET INTEREST MARGIN NOTES, SERIES 2004-9XS, CLASS A, CLASS B AND CLASS S |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-3 |
| SASCO Net Interest Margin Notes, Series 2005A-XS, Class A, Class B1A and Class B1B |
| SASCO Net Interest Margin Notes, Series 2005-NC1, Class A and Class B |
| STRUCTURED ASSET SECURITIES CORPORATION, REVERSE MORTGAGE LOAN TRUST 2005-RM1, |
| STRUCTURED ASSET SECURITIES CORPORATION, Pass-Through Certificates, Series 2006-4 |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, Series 2006-RF1 |
| SASCO Net Interest Margin Notes, Series 2005-7XS, Class A and Class B |
| SHARPS SP I LLC Net Interest Margin 2007-RS1N Notes, Series 2007-RS1N |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-10H |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-17 |
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, erics 2005-7XS |

| |
|---|
| Terwin Cayman NIM 2006-17, Ltd., Net Interest Margin Notes, Series 2006-17HE, Class N |
| Terwin Cayman NIM 2006-9, Ltd. |
| Terwin Cayman NIM 2007-2, Ltd. |
| Terwin Mortgage Trust 2004-EQR1 Mortgage Backed Notes, Series 2004-EQR1 |
| Terwin Cayman NIM 2007-4, Ltd. |
| Thornburg Mortgage Securities Trust 2005-02 |
| Thornburg Mortgage Securities Trust 2006-03 |
| Thornburg Mortgage Securites Trust 2007-3 |
| Thornburg Mortgage Securities Trust 2007-1 |
| Thornburg Mortgage Securities Trust 2007-2 |
| Thornburg Mortgage Securities Trust 2007-4 |
| Thornburg Mortgage Securities Trust 2007-5 |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY4 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY5 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OAl Trust |
| Wamu Alternative Mortgage Pass-Through Certificates 2006-8 |
| Wamu Alternative Mortgage Pass-Through Certs 2005-11 |
| Wamu Alternative Mortgage Pass-Through Certs 2005-6 |
| Wamu Alternative Mortgage Pass-Through Certs 2005-7 |
| Wamu Alternative Mortgage Pass-Through Certs 2005-8 |
| Wamu Alternative Mortgage Pass-Through Certs 2006-1 |
| Wamu Alternative Mortgage Pass-Through Certs 2006-3 |
| Wamu Alternative Mortgage Pass-Through Certs 2006-AR2 |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR12 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR15 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR19 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR5 Trust |
| WaMu Mortgage Pass Through Certificates 2006-AR14 |
| WaMu Mortgage Pass Through Certificates 2006-AR15 |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR18 Trust |
| WaMu Mortgage Pass Through Certificates 2006-AR8 |
| WaMu Mortgage Pass Through Certificates 2006-AR9 |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY1 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY2 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY3 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY6 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY7 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA3 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA6 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR14 Trust |
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2005-3 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-9 |
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2005-AR1 |
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2006-2 |
| Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR10 Trust |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-1 |
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2007-HY1 |

Received for Record at West Hartford, CT
On 03/10/2011 At 11:30:07 am

Essie S. Ladest

| |
|---|
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2007-OC2 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE1 |
| Washington Mutual Asset-Backed Certificates WMABS Series2006-HE2 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE3 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE4 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE5 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2007-HE1 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2007-HE2 |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR17 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR10 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR11 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR12 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR17 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR19 Trust |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR6 Trust |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR7 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA2 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA4 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA5 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR13 Trust |
| Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR 3 Trust |
| Washington Mutual Mortgage Securities Corp. WaMu Mortgage Pass-Through Certificates Series 2004-AR14 |
| WaMu Mortgage Pass-Through Certificates Series 2004-CB4 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR3 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR7 Trust |
| Washington Mutual MSC Mortgage Pass-Through Certificates, Series 2004-RA4 Trust |
| Washington Mutual MSC Mortgage Pass-Through Certificates, Series 2005-RA1 |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR10 Trust |
| WaMu Asset Acceptance Corp. WaMu Mortgage Pass- Through Certificates Series 2006-AR16 |
| WaMu Asset Acceptance Corp. WaMu Mortgage Pass-Through Certificates Series 2006- AR2 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-1 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-2 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-9 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-4 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-5 |
| WaMu Asset Acceptance Corp. Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-HY2 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-OA5 |
| WaMu Asset Acceptance Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2007 -OC 1 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-6 |
| Waterfall Victoria Master Fund 2008-1 Grantor Trust, Series A |
| Waterfall Victoria Master Fund 2008-1 Grantor Trust, Series B |
| Wells Fargo Home Equity Trust Mortgage Pass-Through Certificates, Series 2004-1 |
| WMABS CI NIM Notes Series 2006-HE1, Class N-1 Notes, Class N-2 Notes |
| WMABS CI NIM Notes Series 2006-HE2, Class N-1 Notes, Class N-2 Notes |
| WMABS CI NIM Notes Series 2006-HE3, Class N-1 Notes, Class N-2 Notes |
| WMABS CI NIM Notes Series 2006-HE4, Class N-1 Notes, Class N-2 Notes |
| WMABS CI NIM Notes Series 2006-HE5, Class N-1 Notes, Class N-2 Notes |

| |
|---|
| WMABS NIM Notes Series 2007-HE1 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-5 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-10 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass- Through Certificates WMAL T Series 2005-4 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-4 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-7 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-AR6 |

# EXHIBIT  4

| Fill in this information to identify your case and this filing: |
|---|

**Debtor 1**  Okechukwu ____ Ukaegbe
First Name        Middle Name        Last Name

**Debtor 2**
(Spouse, if filing)  First Name    Middle Name    Last Name

United States Bankruptcy Court for the: Central District of California

Case number _____

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1** 1467 Abbotson Street
Street address, if available, or other description

Carson ____ Ca ____ 90746
City        State    ZIP Code

Los Angeles
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**
$ 500,000.00

**Current value of the portion you own?**
$ 500,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

**1.2** _____
Street address, if available, or other description

_____
City        State    ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**
$ _____

**Current value of the portion you own?**
$ _____

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

Official Form 106A/B                Schedule A/B: Property                page **1**

Debtor 1 _____  Case number (if known)_____
 First Name     Middle Name     Last Name

**1.3.** _____  **What is the property?** Check all that apply.  Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*
Street address, if available, or other description

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Current value of the entire property?**  **Current value of the portion you own?**
$_____  $_____

_____
City          State   ZIP Code

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

_____
County

☐ Check if this is community property
(see instructions)

**Other information you wish to add about this item, such as local property identification number:** _____

**2.** Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. .................................................. → $    485,000.00

---

## Part 2: Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**3.** Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
☐ Yes

**3.1.** Make:  Toyota  **Who has an interest in the property?** Check one.  Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*
Model:  Camery
Year:  2008
Approximate mileage: _____
Other information:

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Current value of the entire property?**  **Current value of the portion you own?**

☐ Check if this is community property (see instructions)

$    4,500.00    $_____

If you own or have more than one, describe here:

**3.2.** Make:  _____  **Who has an interest in the property?** Check one.  Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*
Model:  _____
Year:  _____
Approximate mileage: _____
Other information:

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Current value of the entire property?**  **Current value of the portion you own?**

☐ Check if this is community property (see instructions)

$_____    $_____

Official Form 106A/B               Schedule A/B: Property                              page **2**

Debtor 1 _____   Case number *(if known)* _____
                First Name      Middle Name      Last Name

**3.3.** Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____    $_____

**3.4.** Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____    $_____

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
☐ Yes

**4.1.** Make: _____

Model: _____

Year: _____

Other information:

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____    $_____

If you own or have more than one, list here:

**4.2.** Make: _____

Model: _____

Year: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____    $_____

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ......................  →  $ 4,500.00

Case 2:16-bk-16568-WB Doc 1 Filed 05/18/16 Entered 05/18/16 13:00:13 Desc
Exhibits Page 14 of 57

| Debtor 1 | | | | Case number (if known) |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

**Part 3:** **Describe Your Personal and Household Items**

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☑ Yes. Describe......... Major appliances, furniture, linens, kitchenware    $_____1,000.00

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☑ Yes. Describe......... Televisions and radios; audio, video, stereo, and digital equipment; computers,    $_____1,500.00
   printers, scanners; music

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☑ No
   ☐ Yes. Describe..........    $_____

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☑ No
   ☐ Yes. Describe..........    $_____

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☑ No
    ☐ Yes. Describe..........    $_____

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☑ Yes. Describe......... Everyday clothes, coats, shoes, accessories    $_____

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☑ No
    ☐ Yes. Describe..........    $_____

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☑ No
    ☐ Yes. Describe..........    $_____

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☑ No
    ☐ Yes. Give specific information. .............    $_____

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ➜    $_____2,500.00

| Debtor 1 | | | | Case number *(if known)* |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

**Do you own or have any legal or equitable interest in any of the following?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**16  Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

   ☐ No
   ☑ Yes ............................................................................   Cash: ................. $ _____250.00

**17  Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

   ☐ No
   ☑ Yes .....................

   Institution name:

   17.1. Checking account:    Bank of America _____  $ _____250.00
   17.2. Checking account:    _____  $ _____
   17.3. Savings account:     _____  $ _____
   17.4. Savings account:     _____  $ _____
   17.5. Certificates of deposit: _____  $ _____
   17.6. Other financial account: _____  $ _____
   17.7. Other financial account: _____  $ _____
   17.8. Other financial account: _____  $ _____
   17.9. Other financial account: _____  $ _____

**18  Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

   ☑ No
   ☐ Yes ..............

   Institution or issuer name:
   _____  $ _____
   _____  $ _____
   _____  $ _____

**19  Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

   ☑ No
   ☐ Yes. Give specific
      information about
      them..................

   Name of entity:                              % of ownership:
   _____   0%  %   $ _____
   _____   0%  %   $ _____
   _____   0%  %   $ _____

Debtor 1 _____   Case number (if known)_____

First Name     Middle Name     Last Name

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific        Issuer name:
    information about
    them. .................        _____   $_____
                                   _____   $_____
                                   _____   $_____

21. **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each
    account separately..   Type of account:      Institution name:

                           401(k) or similar plan:  _____   $_____

                           Pension plan:            _____   $_____

                           IRA:                     _____   $_____

                           Retirement account:      _____   $_____

                           Keogh:                   _____   $_____

                           Additional account:      _____   $_____

                           Additional account:      _____   $_____

22. **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No
☐ Yes............................      Institution name or individual:

                           Electric:                _____   $_____

                           Gas:                     _____   $_____

                           Heating oil:             _____   $_____

                           Security deposit on rental unit: _____   $_____

                           Prepaid rent:            _____   $_____

                           Telephone:               _____   $_____

                           Water:                   _____   $_____

                           Rented furniture:        _____   $_____

                           Other:                   _____   $_____

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No
☐ Yes............................      Issuer name and description:

                                   _____   $_____
                                   _____   $_____
                                   _____   $_____

Debtor 1 _____    Case number (if known)_____
            First Name      Middle Name      Last Name

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
☐ Yes .................................    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

    _____    $_____
    _____    $_____
    _____    $_____

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No
☐ Yes. Give specific
    information about them. ..    |_____|    $_____

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No
☐ Yes. Give specific
    information about them. ..    |_____|    $_____

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No
☐ Yes. Give specific
    information about them. ..    |_____|    $_____

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**

☑ No
☐ Yes. Give specific information
    about them, including whether
    you already filed the returns
    and the tax years. ....................    Federal:    $_____
                                                State:    $_____
                                                Local:    $_____

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No
☐ Yes. Give specific information. ............    Alimony:    $_____
                                                  Maintenance:    $_____
                                                  Support:    $_____
                                                  Divorce settlement:    $_____
                                                  Property settlement:    $_____

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation,
                Social Security benefits; unpaid loans you made to someone else

☑ No
☐ Yes. Give specific information. ............    |_____|    $_____

Debtor 1 _____     Case number (if known)_____

      First Name      Middle Name      Last Name

**31. Interests in insurance policies**

   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

☐ Yes. Name the insurance company
     of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| _____ | _____ | $ _____ |
| _____ | _____ | $ _____ |
| _____ | _____ | $ _____ |

**32. Any interest in property that is due you from someone who has died**

   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive
   property because someone has died.

☑ No

☐ Yes. Give specific information............

                                                                $ _____

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

☐ Yes. Describe each claim..................

                                                               $ _____

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights
to set off claims**

☑ No

☐ Yes. Describe each claim..................

                                                               $ _____

**35. Any financial assets you did not already list**

☑ No

☐ Yes. Give specific information............

                                                               $ _____

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here** ..........................................................................➔    $ _____

---

**Part 5:**     **Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.

☐ Yes. Go to line 38.

                                                       **Current value of the
portion you own?**

                                                     Do not deduct secured claims
or exemptions.

**38. Accounts receivable or commissions you already earned**

☐ No

☐ Yes. Describe.........

                                                               $ _____

**39. Office equipment, furnishings, and supplies**

   *Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☐ No

☐ Yes. Describe......

                                                               $ _____

Debtor 1 _____   Case number (if known)_____
First Name    Middle Name    Last Name

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☑ No
☐ Yes. Describe ..... [                                                    ]   $_____

41. **Inventory**

☑ No
☐ Yes. Describe ..... [                                                    ]   $_____

42. **Interests in partnerships or joint ventures**

☑ No
☐ Yes. Describe ......

| Name of entity: | % of ownership: | |
|---|---|---|
| _____ | _____% | $_____ |
| _____ | _____% | $_____ |
| _____ | _____% | $_____ |

43. **Customer lists, mailing lists, or other compilations**

☑ No
☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

  ☐ No
  ☐ Yes. Describe......... [                                          ]   $_____

44. **Any business-related property you did not already list**

☑ No
☐ Yes. Give specific
    information .........   _____   $_____
                           _____   $_____
                           _____   $_____
                           _____   $_____
                           _____   $_____
                           _____   $_____

45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here .................................................. →   $_____

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☑ No. Go to Part 7.
☐ Yes. Go to line 47.

**Current value of the
portion you own?**

Do not deduct secured claims
or exemptions.

47. **Farm animals**
*Examples:* Livestock, poultry, farm-raised fish

☑ No
☐ Yes...................... [                                    ]   $_____

Debtor 1 _____
First Name   Middle Name   Last Name

Case number (if known) _____

48. **Crops—either growing or harvested**

☐ No
☐ Yes. Give specific
   information ............

$ _____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☐ No
☐ Yes ............

$ _____

50. **Farm and fishing supplies, chemicals, and feed**

☐ No
☐ Yes

$ _____

51. **Any farm- and commercial fishing-related property you did not already list**

☐ No
☐ Yes. Give specific
   information ............

$ _____

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** ...............................

→ $ _____

---

### Part 7:   Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership

☐ No
☐ Yes. Give specific
   information ............

$ _____
$ _____
$ _____

54. **Add the dollar value of all of your entries from Part 7. Write that number here** .............................

→ $ _____

---

### Part 8:   List the Totals of Each Part of this Form

55. Part 1: Total real estate, line 2 ...............................................   → $   485,000.00

56. Part 2: Total vehicles, line 5        $   4,500.00

57. Part 3: Total personal and household items, line 15        $   2,500.00

58. Part 4: Total financial assets, line 36        $ _____

59. Part 5: Total business-related property, line 45        $ _____

60. Part 6: Total farm- and fishing-related property, line 52        $ _____

61. Part 7: Total other property not listed, line 54        + $ _____

62. **Total personal property.** Add lines 56 through 61. ...................        $   7,000.00   Copy personal property total → + $   7,000.00

63. **Total of all property on Schedule A/B.** Add line 55 + line 62 .............................        $   492,000.00

| Fill in this information to identify your case: |
|---|

Debtor 1 _____
           First Name      Middle Name      Last Name

Debtor 2 _____
(Spouse, if filing) First Name    Middle Name      Last Name

United States Bankruptcy Court for the: _____ District of _____

Case number _____
(If known)

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☐ Yes. Fill in all of the information below.

## Part 1:  List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|

**2.1** Ocwen
Creditor's Name

_____
Number     Street

Box 79135

Phoenix,    AZ   85062
City       State   ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred _____

Describe the property that secures the claim:

Real Property, debtors primary residence.

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number   REDACTED

$ 450,000.00    $ 485,000.00    $ _____

**2.2** _____
Creditor's Name

_____
Number     Street

_____

_____
City       State   ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred _____

Describe the property that secures the claim:

_____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

$ _____    $ _____    $ _____

Add the dollar value of your entries in Column A on this page. Write that number here:    $ 450,000.00

# EXHIBIT  5

**CLOSED**

# U.S. Bankruptcy Court
## Central District of California (Los Angeles)
### Bankruptcy Petition #: 2:10-bk-22620-RN

|  |  |
|---|---|
| | *Date filed:* 04/01/2010 |
| *Assigned to:* Richard M Neiter | *Date terminated:* 10/27/2010 |
| Chapter 7 | *Debtor discharged:* 08/02/2010 |
| Voluntary | *341 meeting:* 05/28/2010 |
| No asset | *Deadline for objecting to discharge:* 07/09/2010 |

*Debtor disposition:* Standard Discharge

| | |
|---|---|
| ***Debtor*** | represented by **Christie Cronenweth** |
| **Okechukwu Obioma Ukaegbe** | 25202 Crenshaw Blvd. |
| 1467 E. Abbottson Street | Suite 207 |
| Carson, CA 90746 | Torrance, CA 90505 |
| LOS ANGELES-CA | 310-257-4995 |
| SSN / ITIN: xxx-xx-7756 | Fax : 310-257-4996 |
| | Email: cronenwethlaw@yahoo.com |

***Trustee***
**Heide Kurtz (TR)**
2515 S. Western Avenue #11
San Pedro, CA 90732
(310) 832-3604

***U.S. Trustee***
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 04/01/2010 | 1 (63 pgs) | Chapter 7 Voluntary Petition . Fee Amount $299 Filed by Okechukwu Obioma Ukaegbe (Cronenweth, Christie) (Entered: 04/01/2010) |
| 04/01/2010 | 2 (1 pg) | Certificate of Credit Counseling Filed by Debtor Okechukwu Obioma Ukaegbe. (Cronenweth, Christie) (Entered: 04/01/2010) |
| 04/01/2010 | 3 | |

|  |  |  |
|---|---|---|
|  |  | Statement of Social Security Number(s) Form B21 Filed by Debtor Okechukwu Obioma Ukaegbe. (Cronenweth, Christie) (Entered: 04/01/2010) |
| 04/01/2010 |  | Receipt of Voluntary Petition (Chapter 7)(2:10-bk-22620) [misc,volp7] ( 299.00) Filing Fee. Receipt number 13572785. Fee amount 299.00. (U.S. Treasury) (Entered: 04/01/2010) |
| 04/01/2010 | 5 (2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 05/10/2010 at 04:30 PM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. Objections for Discharge due by 07/09/2010. (Cronenweth, Christie) (Entered: 04/01/2010) |
| 04/06/2010 | 4 (3 pgs) | Notice of Requirement to Complete Course in Financial Management (BNC) . (Tom, Bock) (Entered: 04/06/2010) |
| 04/08/2010 | 6 (3 pgs) | BNC Certificate of Notice (RE: related document(s) 5 Meeting (Chapter 7)) No. of Notices: 14. Service Date 04/08/2010. (Admin.) (Entered: 04/08/2010) |
| 04/08/2010 | 7 (4 pgs) | BNC Certificate of Notice (RE: related document(s) 4 Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 4. Service Date 04/08/2010. (Admin.) (Entered: 04/08/2010) |
| 04/24/2010 | 8 | 341 Meeting of Creditors Continued (Trustee's 341 Filings) on 5/28/2010 at 08:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017 (Kurtz, Heide) (Entered: 04/24/2010) |
| 04/24/2010 | 9 (1 pg) | Continuance of Meeting of Creditors Filed by Trustee Heide Kurtz. 341(a) meeting to be held on 5/28/2010 at 08:00 AM at RM 103, 725 S Figueroa St, Los Angeles, CA 90017. (Kurtz, Heide) (Entered: 04/24/2010) |
| 04/30/2010 | 10 (46 pgs; 2 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 1467 East Abbottson Street, Carson, California 90746 . Fee Amount $150, Filed by Creditor U.S. Bank, N.A. et al (Attachments: 1 Exhibit 1-4) (Makkabi, David) (Entered: 04/30/2010) |

| | | |
|---|---|---|
| 04/30/2010 | | Receipt of Motion for Relief from Stay - Real Property(2:10-bk-22620-RN) [motion,nmrp] ( 150.00) Filing Fee. Receipt number 14022629. Fee amount 150.00. (U.S. Treasury) (Entered: 04/30/2010) |
| 04/30/2010 | | Hearing Set (RE: related document(s)10 Motion for Relief from Stay - Real Property filed by Creditor U.S. Bank, N.A. et al) The Hearing date is set for 6/8/2010 at 09:00 AM at Crtrm 1645, 255 E Temple St., Los Angeles, CA 90012. The case judge is Richard M Neiter (Jones, Phyllis R.) (Entered: 04/30/2010) |
| 05/28/2010 | 11 (2 pgs) | Financial Management Course Certificate Filed *and Debtors Certification of Personal Financial Management* Filed by Debtor Okechukwu Obioma Ukaegbe. (Cronenweth, Christie) (Entered: 05/28/2010) |
| 06/01/2010 | 12 | Chapter 7 Trustee's Report of No Distribution: I, Heide Kurtz, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 2 months. Assets Abandoned (without deducting any secured claims): $ 362000.00, Assets Exempt: $ 41795.00, Claims Scheduled: $ 1243265.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 1243265.00. (Kurtz, Heide) (Entered: 06/01/2010) |
| 06/08/2010 | | Hearing (Bk Motion) Continued (RE: related document(s) 10 MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by U.S. Bank, N.A. et al) Hearing to be held on 08/12/2010 at |

| | | |
|---|---|---|
| | | 09:00 AM 255 E. Temple St. Courtroom 1645 Los Angeles, CA 90012 for 10, (Jones, Phyllis R.) (Entered: 06/08/2010) |
| 08/02/2010 | 13 (2 pgs) | DISCHARGE OF DEBTOR(S) (BNC). (Mai, Philip) (Entered: 08/02/2010) |
| 08/04/2010 | 14 (3 pgs) | BNC Certificate of Notice (RE: related document(s) 13 DISCHARGE OF DEBTOR - Chapter 7 (Batch) (BNC)) No. of Notices: 10. Service Date 08/04/2010. (Admin.) (Entered: 08/04/2010) |
| 08/13/2010 | | Hearing (Bk Motion) Continued (RE: related document(s) 10 MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by U.S. Bank, N.A. et al) Hearing to be held on 09/14/2010 at 09:00 AM 255 E. Temple St. Courtroom 1645 Los Angeles, CA 90012 for 10, (Jones, Phyllis R.) (Entered: 08/13/2010) |
| 09/08/2010 | 15 (5 pgs) | Stipulation By U.S. Bank, N.A. et al and *Okechukwu Obioma Ukaegbe stipulation for dismissal of hearing on motion for relief from the automatic stay filed by U.S. Bank, N.A., Successor Trustee to Bank of America N.A. as Successor by merger to Lasalle Bank, N.A., as trustee for First Franklin Mortgae Loan Trust, Mortgage Loan asset-backed certificates, series FF-18* Filed by Creditor U.S. Bank, N.A. et al (Makkabi, David) (Entered: 09/08/2010) |
| 09/13/2010 | 16 (5 pgs) | Order on Stipulation for Dismissal of hearing on motion for relief from stay. (Related Doc # 15) Signed on 9/13/2010 (Pickett, Betty) (Entered: 09/13/2010) |
| 09/15/2010 | 17 (6 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)16 Order (Generic)) No. of Notices: 2. Service Date 09/15/2010. (Admin.) (Entered: 09/15/2010) |
| 10/27/2010 | 18 (1 pg) | Bankruptcy Case Closed - DISCHARGE (Paredes, Linda) (Entered: 10/27/2010) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/03/2016 18:32:49 | | | |
| PACER Login: | Pacerwolf:2558381:4814562 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:10-bk-22620-RN Fil or Ent: filed To: 6/3/2016 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 3 | Cost: | 0.30 |

# EXHIBIT  6

**CLOSED**

# U.S. Bankruptcy Court
## Central District of California (Los Angeles)
## Bankruptcy Petition #: 2:14-bk-22093-VZ

|  |  |
|---|---|
| *Date filed:* | 06/23/2014 |
| *Date terminated:* | 08/14/2014 |
| *Debtor dismissed:* | 08/06/2014 |
| *341 meeting:* | 08/05/2014 |

*Assigned to:* Vincent P. Zurzolo
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Other Reason

**Debtor**
**Obioma Ukaegbe**
1467 Abbottson St
Carson, CA 90746
LOS ANGELES-CA
310-916-4098
SSN / ITIN: xxx-xx-7756
*aka* **Obioma Okechukw Ukaegbe**

represented by **Obioma Ukaegbe**
PRO SE

**Trustee**
**Nancy K Curry (TR)**
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017
213-689-3014

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 06/23/2014 | 1<br>(52 pgs) | Chapter 13 Voluntary Petition . Fee Amount $310 Filed by Obioma Ukaegbe (Collins, Kim S.) (Entered: 06/23/2014) |
| 06/23/2014 | 2<br>(2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 08/05/2014 at 09:00 AM at RM 1, 915 Wilshire Blvd., 10th Floor, , Los Angeles, CA 90017. Confirmation hearing to be held on 10/06/2014 at 09:00 AM at Crtrm 1368, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 11/03/2014. (Collins, Kim S.) (Entered: 06/23/2014) |

| | | |
|---|---|---|
| 06/23/2014 | 3 | Statement of Social Security Number(s) (Official Form B21) Filed by Debtor Obioma Ukaegbe . (Collins, Kim S.) (Entered: 06/23/2014) |
| 06/23/2014 | 4 (1 pg) | Certificate of Credit Counseling Filed by Debtor Obioma Ukaegbe . (Collins, Kim S.) (Entered: 06/23/2014) |
| 06/23/2014 | 5 (8 pgs) | Chapter 13 Plan (LBR F3015-1) Filed by Debtor Obioma Ukaegbe . (Collins, Kim S.) (Entered: 06/23/2014) |
| 06/23/2014 | | Receipt of Chapter 13 Filing Fee - $310.00 by 01. Receipt Number 20183076. (admin) (Entered: 06/24/2014) |
| 06/24/2014 | | Notice of Debtor's Prior Filings for debtor Obioma Ukaegbe Case Number 10-22620, Chapter 7 filed in California Central Bankruptcy on 04/01/2010 , Standard Discharge on 08/02/2010.(Admin) (Entered: 06/24/2014) |
| 06/25/2014 | 6 (3 pgs) | BNC Certificate of Notice (RE: related document(s)2 Meeting (AutoAssign Chapter 13)) No. of Notices: 4. Notice Date 06/25/2014. (Admin.) (Entered: 06/25/2014) |
| 07/01/2014 | 7 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Bui, Joely Khanh Linh. (Bui, Joely Khanh Linh) (Entered: 07/01/2014) |
| 07/17/2014 | 8 (2 pgs) | Chapter 13 Trustee's Notice of Requirements *with Proof of Service*. (Curry (TR), Nancy) (Entered: 07/17/2014) |
| 08/06/2014 | 9 (1 pg) | Chapter 13 Trustee's declaration that debtor failed to appear for examination. (Curry (TR), Nancy) (Entered: 08/06/2014) |
| 08/06/2014 | 10 (1 pg) | ORDER and Notice of Dismissal arising from Ch 13 trustee's motion to dismiss with restrictions (11 U.S.C. Sections 1307 and 109(g))(BNC) - **Debtor** Dismissed for 180-Day. Barred Debtor Ukaegbe, Obioma starting 8/6/2014 to 2/1/2015 (RE: related document(s)2 Meeting (AutoAssign Chapter 13)) (Gae, Hannah) (Entered: 08/06/2014) |
| 08/08/2014 | 11 (2 pgs) | BNC Certificate of Notice (RE: related document(s)10 Dism w/restrictions arising from Ch13 Tr's Mot to dism (Sec.1307and(109(g))(Order/Notice)(VAN-158)(BNC)) No. of Notices: 3. Notice Date 08/08/2014. (Admin.) (Entered: 08/08/2014) |
| 08/14/2014 | 12 (4 pgs) | Chapter 13 Trustee's Final Report and Account . (Curry (TR), Nancy) (Entered: 08/14/2014) |

| | | |
|---|---|---|
| 08/14/2014 | 13 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (Vandensteen, Nancy) (Entered: 08/14/2014) |
| 11/05/2014 | 14 (4 pgs) | Motion to set aside order of 180 restiction to file new bankruptcy petition; Filed by Debtor Obioma Ukaegbe (Walter, Earnestine) Additional attachment(s) added on 11/7/2014 (Walter, Earnestine). (Entered: 11/06/2014) |
| 11/10/2014 | 15 (1 pg) | Order denying Debtor's motion to vacate 180-day restriction against being a Debtor "for additional information refer to image" (Generic) (Related Doc # 14 ) Signed on 11/10/2014 (Johnson, Tina R.) (Entered: 11/10/2014) |
| 11/12/2014 | 16 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)15 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 11/12/2014. (Admin.) (Entered: 11/12/2014) |
| 11/13/2014 | 17 (4 pgs) | Motion to set aside RE: 180 Day Restriction Filed by Debtor Obioma Ukaegbe (Carranza, Shemainee) (Entered: 11/17/2014) |
| 11/13/2014 | 18 (3 pgs) | Notice of motion/application Filed by Debtor Obioma Ukaegbe (RE: related document(s)17 Motion to set aside RE: 180 Day Restriction Filed by Debtor Obioma Ukaegbe). (Carranza, Shemainee) (Entered: 11/17/2014) |
| 11/13/2014 | 19 (3 pgs) | Notice of motion for order without hearing Filed by Debtor Obioma Ukaegbe (RE: related document(s)17 Motion to set aside RE: 180 Day Restriction Filed by Debtor Obioma Ukaegbe). (Carranza, Shemainee) (Entered: 11/18/2014) |
| 12/05/2014 | 20 (4 pgs) | Declaration re: non opposition Filed by Debtor Obioma Ukaegbe (RE: related document(s)1718 Motion to set aside RE: 180 Day Restriction). (Walter, Earnestine) (Entered: 12/05/2014) |
| 02/05/2015 | 21 (1 pg) | Order Denying, as Moot, Motion to Vacate 180 Day Prohibition Against Being a Debtor (Related Doc # 20 ) Signed on 2/5/2015 (Carranza, Shemainee) (Entered: 02/05/2015) |

| | | |
|---|---|---|
| 02/07/2015 | 22 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)21 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 02/07/2015. (Admin.) (Entered: 02/07/2015) |

## PACER Service Center

### Transaction Receipt

06/03/2016 18:37:05

| PACER Login: | Pacerwolf:2558381:4814562 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:14-bk-22093-VZ Fil or Ent: filed To: 6/3/2016 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 2 | Cost: | 0.20 |

# EXHIBIT  7

**Repeat-cacb, RepeatPACER, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
# Central District of California (Los Angeles)
# Bankruptcy Petition #: 2:15-bk-12075-WB

*Date filed:*  02/12/2015
*Date terminated:*  06/01/2015
*Debtor dismissed:*  04/24/2015
*341 meeting:*  03/24/2015

*Assigned to:* Julia W. Brand
Chapter 13
Voluntary
Asset

*Debtor disposition:*  Dismissed for Other
Reason

| | |
|---|---|
| ***Debtor***<br>**Obioma Ukaegbe**<br>1467 Abbottson St<br>Carson, CA 90746<br>LOS ANGELES-CA<br>310-916-4098<br>SSN / ITIN: xxx-xx-7756<br>*aka* **Obioma Okechukw Ukaegbe** | represented by **Obioma Ukaegbe**<br>PRO SE |

***Trustee***
**Nancy K Curry (TR)**
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017
213-689-3014

***U.S. Trustee***
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing<br>Date | # | Docket Text |
|---|---|---|
| | | |

| | | |
|---|---|---|
| 02/12/2015 | [1](#)<br>(50 pgs; 2 docs) | Chapter 13 Voluntary Petition . Fee Amount $310 Filed by Obioma Ukaegbe Schedule F (Form B6F) due 2/26/2015. Incomplete Filings due by 2/26/2015. (Huerta, Gabriela) (Entered: 02/12/2015) |
| 02/12/2015 | [2](#)<br>(1 pg) | Certificate of Credit Counseling Filed by Debtor Obioma Ukaegbe . (Huerta, Gabriela) (Entered: 02/12/2015) |
| 02/12/2015 | [3](#)<br>(2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 03/24/2015 at 12:00 PM at RM 1, 915 Wilshire Blvd., 10th Floor, , Los Angeles, CA 90017. Confirmation hearing to be held on 04/22/2015 at 10:00 AM at Crtrm 1375, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 06/22/2015. (Huerta, Gabriela) (Entered: 02/12/2015) |
| 02/12/2015 | [4](#) | Statement of Social Security Number(s) (Official Form B21) Filed by Debtor Obioma Ukaegbe . (Huerta, Gabriela) (Entered: 02/12/2015) |
| 02/12/2015 | [5](#)<br>(8 pgs) | Chapter 13 Plan (LBR F3015-1) Filed by Debtor Obioma Ukaegbe . (Huerta, Gabriela) (Entered: 02/12/2015) |
| 02/12/2015 | | Receipt of Chapter 13 Filing Fee - $310.00 by 01. Receipt Number 20191727. (admin) (Entered: 02/13/2015) |
| 02/13/2015 | | Notice of Debtor's Prior Filings for debtor Obioma Ukaegbe Case Number [14-22093](#), Chapter 13 filed in California Central Bankruptcy on 06/23/2014 , Dismissed for Other Reason on 08/06/2014; Case Number [10-22620](#), Chapter 7 filed in California Central Bankruptcy on 04/01/2010 , Standard Discharge on 08/02/2010.(Admin) (Entered: 02/13/2015) |

| | | |
|---|---|---|
| 02/14/2015 | [6](# )<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)[3](# ) Meeting (AutoAssign Chapter 13)) No. of Notices: 5. Notice Date 02/14/2015. (Admin.) (Entered: 02/14/2015) |
| 02/14/2015 | [7](# )<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)[1](# ) Voluntary Petition (Chapter 13) filed by Debtor Obioma Ukaegbe) No. of Notices: 1. Notice Date 02/14/2015. (Admin.) (Entered: 02/14/2015) |
| 02/19/2015 | [8](# )<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Domeyer, Mark. (Domeyer, Mark) (Entered: 02/19/2015) |
| 02/20/2015 | [9](# )<br>(1 pg) | Renotice 341 Meeting (BNC) 341(a) meeting to be held on 3/19/2015 at 12:00 PM at RM 1, 915 Wilshire Blvd., 10th Floor, , Los Angeles, CA 90017. [3](# ) (Ventura, Olivia) (Entered: 02/20/2015) |
| 02/22/2015 | [10](# )<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)[9](# ) Renotice 341 Meeting (BNC)) No. of Notices: 5. Notice Date 02/22/2015. (Admin.) (Entered: 02/22/2015) |
| 02/23/2015 | [11](# )<br>(1 pg) | Schedule F (Official Form B6F) - Creditors Holding Unsecured Nonpriority Claims Filed by Debtor Obioma Ukaegbe (RE: related document(s)[1](# ) Voluntary Petition (Chapter 13)). (Kaaumoana, William) (Entered: 02/23/2015) |
| 02/25/2015 | [12](# )<br>(2 pgs) | Chapter 13 Trustee's Notice of Requirements *with Proof of Service*. (Curry (TR), Nancy) (Entered: 02/25/2015) |
| | [13](# )<br>(55 pgs) | Objection to Confirmation of Plan Filed by Creditor U.S. Bank National Association, as trustee, in trust for registered holders of First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FF18 (RE: related document(s)[5](# ) Chapter 13 Plan |

| 03/17/2015 | | (LBR F3015-1) Filed by Debtor Obioma Ukaegbe.). (Domeyer, Mark) (Entered: 03/17/2015) |
|---|---|---|
| 03/23/2015 | [14](1 pg) | Chapter 13 Trustee's declaration that debtor failed to appear for examination. (Curry (TR), Nancy) (Entered: 03/23/2015) |
| 04/24/2015 | [15](1 pg) | ORDER and Notice of dismissal arising from chapter 13 confirmation hearing - **Debtor** Dismissed. (BNC) (RE: related document(s)[3] Meeting (AutoAssign Chapter 13), [9] Renotice 341 Meeting (BNC)) (Bryant, Sandra R.) (Entered: 04/24/2015) |
| 04/26/2015 | [16](2 pgs) | BNC Certificate of Notice (RE: related document(s)[15] ORDER and Notice of Dismissal arising from Ch 13 Conf. Hrg. (BNC)) No. of Notices: 5. Notice Date 04/26/2015. (Admin.) (Entered: 04/26/2015) |
| 05/04/2015 | [17](4 pgs) | Chapter 13 Trustee's Final Report and Account . (Curry (TR), Nancy) (Entered: 05/04/2015) |
| 06/01/2015 | 18 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (Kaaumoana, William) (Entered: 06/01/2015) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 01/06/2017 09:05:18 |

| PACER Login: | Pacerwolf:2558381:4814562 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:15-bk-12075-WB Fil or Ent: filed To: 1/6/2017 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 2 | Cost: | 0.20 |